OPINION of the Court, by
Judge Logajv.
These are cross appeals from a decree of the general court, upon conflicting claims to land. Morrison, who was the complainant below, holds under an entry made on the 31st of July, 1783, by John Tibbs, &c. for 20,000 •acres, on M’Connell’s fork of Licking: beginning at a large black ash and small buckeye, marked thus I. T. on the side of the Buffalo road leading from the lower Blue licks a northeast course, and about seven miles northeast and by east from the said Blue licks ; running thence due north 1269 and 9-l0th poles; thence 2529 8-10th poles east; thence south 1269 9-10th poled 3 thence west 2529 8-10th poles to the beginning.”
The diftjnee up a creek to afrertain the beginning of an eni.y,⅛bear, ⅛⅜3⅛,° the neanit prafi-cable >ou;e.
and the exañ ’ diftance take,.
veH<íh-fe tr¡’f;
•< 750 acres, C^iiTc™ k* ta extend6 up faid -creek on b.<th futa fot ^
acres, adj ,i„.ng .he aoove on the ⅛. nea'iy’s.^b'.1 & up bum a .e, of the
ioining°thC,<!!’ b„ve on the eait tide « run. »ing upon 00⅛ creek **
sec KincjH & ⅛1 a, hi.
The first question presented for consideration is, whether the beginning of this entry is sufficiently described to support, an entry ?
Upon the score of authority, it has twice before been determined by this court, and once by the supreme court of the United States, that this is a good entry, The evidence now in support of it Seems to be substan-{tally the same as when before decided. The lower ^‘uc lick, the road, its course, the distance and marked trees taken together, although neither of the calls, after leaving the lick, is exactly correct; yet they all canT conviction in the identity of the place intended, and satisfactorily shew that a subsequent locator, on using reasonable diligence, might with certainty have ilscei'ta‘lie(l the point of beginning. This road fits the call of the entry much better than anyother $ and taking the distance as a mean only to find the trees, it will carry 0,ie j|p0 their neighborhood on the road, which still re-tnaijied as a certain clew to find them, plainly marked, standing almost in the road : and when found, it is be-¡'(üvcq that a doubt would scarcely have been entertain-e(l with regard to the spot as the one intended in the entry. If it were a blue instead of a Mack ash, the buck-Cye called for standing immediately by it, also plainly marked with the initials of John Tibbs’s name, and no other trees calculated to embarrass the conclusion of those the ones intended, we can but conceive that a per-SOil 111 responding to the inquiry, whether this was the place intended by the locator, would have answered in the affirmative.
^ part only of this entry was surveyed, and seems to he comprehended within the scope of its calls ; and the complainant claiming a part of that consummated by grant, it remains in the next place to investigate the title of the defendants.
They claim under the following entry :
“ May 26th, 1780 — Thomas Coghill enters 1500 acres upon a treasury warrant, joining the above entry on the east side, and running up on both sides of the creek for quantity.”
,Tke entry to which this refers was made on the same day, in the name of Jesse Hoard, for 750 acres, lying “ on the waters of the north fork of Licking, on a creek that empties into the north fork where the War road crosses that leads from the mouth of Limestone to the *381 lower Blue lick; adjoining an entry of Henry Lee, of 750 acres, on the southeast side, and running nearly southeast, and up on both sides of the creek lor quantity.”
Lee’s entry was made on the 24th of the same month, for 750 acres, “ on the waters of the north fork of Licking creek, on the south side thereof, running in where the War road crosses from the mouth of Limestone to the lower Blue lick, about two miles up said branch ; and to extend up said branch for quantity on both sides thereof.”
The description contained in this entry necessarily leads to the inquiry, where did the War road, leading from the mouth of Limestone to the lower Blue lick, cross the north fork of Licking ?
Two roads leading from one to the other of these places, crossing the north fork some distance apart, are shown, and urged as equally applying to the calls ofthis-entry: one crossing at the mouth of Mill creek, and the other about 30 poles from the mouth of Lee’s creek. Both those streams empty into the north fork of Licking, on the south side. And there is proof in the cause that the road which crossed near the mouth of Lee’s creek, was generally described as at the mouth.
We shall consider, first, the evidence in relation to these roads j the weight of which we think is in favor of the road crossing at the mouth of Mill creek, as the most generally known by the name of the War read, leading from Limestone to the lower Blue licks. But both roads were plain, both frequently travelled, and both had the appearance of considerable Indian sign. One of them, however, seems rather to have been distinguished from the other, as the road leading immediately from the Blue lick to Limestone; whilst the other was more properly known as the road leading either from Limestone or the Blue lick to Lawrence’s creek; and from thence to the other of said places. But if this were the only call tending to designate the place intended, much doubt would be entertained with respect to the validity of the entry.
But, in addition to this evidence, is the express call for a creek running in “ where the War road crosses the north fork of Licking.” At this place the road crossed immediately at the mouth of the creek ; at the other crossing it did not: and although in conversations relating to these roads, the one may have been represent- *382 e(j as cr0ssing at the mouth of one of those creeks ; and the other, in contradistinction thereto, as crossing at the mouth of the other; yet, when both are brought into consideration, as applicable to the express and definite call in the entry for that creek emptying into the north fork, “where” the War road crossed, we can perceive but little room for doubt as to th* creek intended.
Another argument in favor of this entry, is deducible from the length of the +wo creeks. Lee’s creek, as delineated on the connected plat (and with regard to the length of which there is no other evidence in the cause) Would be entirely covered by the entries of Lee and Hoard, from the point of their beginning to its head. So that the defendant’s entry, instead of lying on, and running up on both sides of the creek, would be altogether removed above its head branches. This consequence would not follow from the application of the entry to the other creek. The entry, then, in relation to one of the two creeks, applies to, and so well fits, that it would be held goad ; but if applied to the other, the creek so illy correspond^ with the call, that the entry could not be supported. Hence the just and correct conclusion seems to be, that when we consider the weight of evidence is in favor of one as the direct and immediate road from the mouth of Limestone to the lower Blue lick; that the express call of the entry for the road crossing “ where” tiro creek empties, applies best to the same road; and that the creek emptying there is of a size and length to measure the call in the entry of the defendants, so far as to locate and support it, whilst the other creek would not answer this end; we are of opinion that this entry intended the creek on which it has been surveyed, and that it is a good and valid entry.
We come now to determine 011 the manner of surveying those entries.
Lee’s entry calls to begin “ about two miles up said branch,” and to extend up on both sides for quantity. The point of beginning must by construction be fixed at two miles up the creek. But whether this distance shall be obtained by admeasurement with the meanders of the creek, or on a direct and the most practicable route of passing, is a question necessary to be decided. It has been settled by repeated decisions of this court, that a direct course or the nearest possible route, is the proper rule of construction upon calls like the present for the *383 ascertainment of distances by land, where the entry does not clearly require the meanders of the creek to be par-sued. — See Johnson, &c. vs. Rowland, determined 1799: same vs. Brown, &c. (Pr. Dec. 62.) — Nicholls vs. Wells, (same book 307) — and Carland vs. Rowland, (3 vol. 125.)
Lee’s entry, then, should have been surveyed, beginning on Mill creek, two miles from its mouth on a direct line, or the nearest practical route-; thence running up the creek on both sides with parallel lines to its general course, so far that rectangular lines equally bisected by the, creek, both below and above, will include the quantity of 750 acres in a square.
Hoard’s entry calls to adjoin Lee’s on the southeast side, and to run nearly S. E. and up on both sides of the creek.
This entry we think should be surveyed adjoining Lee’s above, continuing the same course, equal distances on each side of the creek, so far as will place the claim as nearly in a square as a compliance with the other calls will permit, by extending from the base parallel lilies a due southeast course, or as near that course as may be, by including the creek, with the upper boundary , at right angles to those parallel lines.
And Coghill's entry should be then surveyed adjoining Hoard’s above, being the most eastwardly side, and laid as nearly in a square figure as it can be placed by equally bisecting the lower boundary with the creek, adjoining Hoard’s, and continuing the same course so far that lines running up on both sides of the main stream, parallel to its general course, will include 1500 acres, by a line at right angles above to those parallel lines.
For so much of the land as is comprehended by the' defendants’ patent, and which w ill fall within the survey made as herein directed, they have the superior right; and for the residue, lying within the claim of the complainant, he holds the better right.
Wherefore, it is decreed and ordered, that the decree of the court below, which would give a different position to the defendants’ claim, be reversed and set aside; and that the cause be remanded to said court for a decree to be entered up conformable to the foregoing opinion ; and to make such other and farther orders and decrees aá shall 6e agreeable to equity.